PROVIDENCE, FALL RIVER. AND NEWPORT STEAMBOAT
COMPANY *vs.* CITY OF FALL RIVER & others.

Bristol.   January 19, 1903. — June 18, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND,
LORING, & BRALEY, JJ.

*Constitutional Law.   Grade Crossing Acts.   Equity Jurisdiction,* Continuing
Trespass.   *Words,* "Confirmed."

St. 1900, c. 472, relating to the abolition of the grade crossings of Brownell Street
and other streets and ways in the city of Fall River and the railroad of the Old
Colony Railroad Company, is constitutional as special legislation prescribing
new rules and additional provisions for making a public improvement.   The
portion of the statute which purports to confirm a report of commissioners made
to the Superior Court under St. 1890, c. 428, refers to an independent adoption of
that report as part of a new legislative act.   MORTON, LATHROP, & BRALEY, JJ.
dissenting, on the ground that the act was an attempt by the Legislature to ex-
ercise judicial powers in violation of art. 30 of the Declaration of Rights.

St. 1900, c. 472, in regard to the abolition of certain grade crossings in Fall River,
including the provisions adopted from St. 1890, c. 428, contains sufficient pro-
visions as to notice to constitute due process of law and is not in violation of
the Constitution of the United States.

The fact that the work of changing the grade of a certain street, ordered by a
report of commissioners under the grade crossing acts, cannot be done without
the use and occupation of certain land of an abutter on the street, gives no right
to the use of that land.

On a bill in equity brought by a steamboat company owning land abutting on Cen-
tral Street in Fall River to restrain the work done by the city of Fall River and
the Old Colony Railroad Company in abolishing certain grade crossings under
St. 1890, c. 428, and St. 1900, c. 472, where it appeared that the defendants in
prosecuting the work committed certain trespasses and threatened to commit
other trespasses by occupying portions of the plaintiff's land and keeping struc-
tures upon it not authorized by the report of the commissioners, it was *held*, that
so far as the defendants were using the plaintiff's property wilfully and without
legal right and were threatening to continue so to use it, an injunction should be
issued to restrain them, and also that the plaintiff should be awarded damages
for injuries suffered from the unauthorized acts of the defendants.

BILL IN EQUITY, filed December 9, 1902, to restrain the city
of Fall River, the Old Colony Railroad Company, and Clarence
W. Blakeslee and Sons, contractors, from committing repeated
and threatened trespasses on the plaintiff's wharf and property
abutting on Central Street in Fall River, and from carrying on

work in Central Street in front of the plaintiff's premises alleged to be unauthorized.

The case came on to be heard before *Loring*, J., who reported it for determination by the full court without passing on the constitutional questions involved.

The following facts appeared by the report:

The plaintiff, a corporation organized under the laws of the State of Rhode Island, is a common carrier operating a line of steamboats from Fall River to other points. It owns certain valuable wharf and dock property extending five hundred feet along the north side of Central Street.

Under St. 1890, c. 428, and acts in amendment thereof and in addition thereto the mayor and aldermen of the city of Fall River filed in the Superior Court a petition for the abolition of certain grade crossings in Fall River. Thereupon commissioners were appointed who subsequently filed their report in the Superior Court. No further action was taken upon the report in the Superior Court; but St. 1900, c. 472, in reference thereto was passed by the Legislature. On January 1, 1902, the commissioners' report and the plans and statement referred to in St. 1900, c. 472, were filed and recorded in the registry of deeds of the Fall River district of the county of Bristol.

It was provided in the report that the grade crossings at Pond and Water Streets were discontinued. The grade of Central Street was greatly altered and was raised in front of the plaintiff's premises from nothing at Pond Street to about nine feet near the plaintiff's easterly line.

The defendants Blakeslee and Sons were engaged under a contract with the Old Colony Railroad Company in doing the work prescribed in the commissioners' report, and in accordance therewith had begun to raise the grade of Central Street in front of the plaintiff's property. The defendants closed the street to public travel with teams, pulled up the gutters and curbing, destroyed the guard walls on the south side of the street and intend to proceed with the work relating to Central Street prescribed in the report. The closing of the street was done in accordance with the provisions of the report after a vote of the city council of Fall River and the publication of a notice to that effect in the four daily papers published there.

The only access to the plaintiff's wharf had been theretofore by way of Pond Street and Water Street (which by the report had been discontinued but were not to be closed during the work on Central Street) and Central Street. The justice found and ruled that the plaintiff suffered such special and peculiar damage by the obstruction of Central Street in front of its property and the threatened work thereon as to give it a private right of action therefor, if such obstruction and work were illegal.

"In raising the grade of Central Street, according to the commissioners' report, it will be necessary to tear down the present retaining walls and build new ones. The present bridge in Central Street is to be removed and a new one built. In doing all this work it will be necessary and more convenient for and it is the intention of the defendants, Blakeslee and Sons, to go on the plaintiff's land and temporarily occupy and use, for coffer dam and other purposes, a strip of the plaintiff's land between the creek and the building marked ' store ' on the plans next adjoining the north side of Central Street from two feet to six feet wide, and a strip around the abutments of the new bridge from four to eight feet wide. The work proposed cannot be done conveniently without such use and occupation, and such use and occupation is necessary for doing said work. No provision for such use and occupation is made in the commissioners' report, unless the fact that the work therein ordered cannot be done without such use and occupation constitutes an implied taking of such rights to use and occupy."

The evidence showed that lands and rights were acquired to a considerable extent after the passage of the act of 1900 by purchase, and that, in June, 1902, the defendants Blakeslee and Sons, under a contract with the defendant railroad company, began the work of construction and change of streets and railroad tracks as required by the report and the act of 1900, and the work had since been carried on continuously, and was so being carried on at the time of the hearing for a distance of about four miles, and that between $350,000 and $400,000 had been expended in the course of the work and the purchase of land up to the time of the hearing. Work had been done to within about three quarters of a mile on the north and to within about one half a mile on the south of Central Street. The total

estimated cost of carrying out the report of the commissioners was from $1,500,000 to $2,000,000.

Evidence also was offered tending to show that the work of abolishing grade crossings in Fall River was one general scheme, and that the work on Central Street was a part of the scheme.

The plaintiff contended that the defendants had no right to enter upon, occupy or use its premises for the purposes above stated, and moved for an injunction *pendente lite* restraining such trespasses. The plaintiff further contended that the work on Central Street was illegal because it was beyond the power of the commissioners to order it for the following reasons : that the St. 1900, c. 472, was unconstitutional, that the report had never been validly confirmed, and that the St. 1890, c. 428, as well as St. 1900, c. 472, were in violation of the Constitution of the United States.

On the hearing for the temporary injunction the justice ordered that no injunction *pendente lite* should issue if either of the defendants gave a bond with sufficient sureties to the plaintiff, conditioned as required by the justice. If no such bond was filed he directed an injunction *pendente lite* to issue as prayed for. Thereafter such a bond was filed by Blakeslee and Sons in the sum of $2,000 and was approved by the justice, and he denied the issuing of a preliminary injunction and ordered that the bill be retained for assessment of damages.

The plaintiff stated that it did not assent to the bond or care to be heard thereon on the ground that it wished not to waive any right it might have to protect its property from trespass by action at law or otherwise.

The ground on which the plaintiff contended that St. 1890, c. 428, and acts in amendment thereof, as well as St. 1900, c. 472, are in violation of the Constitution of the United States was as follows: " The plaintiff is not to be deprived of its property without due process of law. An essential element of due process of law is a provision for such notice as to make it reasonably certain that the owner of the property taken will be apprised of the taking. No notice was provided in the act of 1890 or in the act of 1900, except the record in the registry of deeds. This is not notice to foreign landowners requisite to constitute due process of law."

The case was argued at the bar in January, 1903, before *Knowlton*, C. J., *Morton, Hammond, Loring*, and *Braley*, JJ., and afterwards was submitted on briefs to all the justices.

*A. J. Jennings & J. M. Morton, Jr.*, (*I. Brayton* with them,) for the plaintiff.

*H. A. Dubuque*, for the city of Fall River.

*F. S. Hall*, for the Old Colony Railroad Company.

*D. F. Slade*, for Blakeslee and Sons, submitted a brief.

KNOWLTON, C. J. The most important question in this case is whether the St. 1900, c. 472, is constitutional. The first section of this act is as follows: " The report of the commissioners appointed by the Superior Court for the county of Bristol to consider the abolition of the grade crossings of Brownell street and other streets and ways and the road of the Old Colony Railroad Company in the city of Fall River, filed in said court on the sixteenth day of July of the current year, is hereby confirmed; the Old Colony Railroad Company and the city of Fall River shall make the alterations prescribed in said report as therein specified; the Commonwealth and said city and railroad company shall pay the cost of said alterations and of the hearing in the proportions prescribed in said report; and all the provisions of chapter four hundred twenty-eight of the acts of the year eighteen hundred and ninety, and all acts in amendment or addition thereto, not inconsistent with this act, shall apply to and govern the proceedings in connection with the abolition of said crossings, in the same manner as if the decision and report of said commission had been confirmed by the court: provided, however, that there shall be filed in the registry of deeds for the county of Bristol a plan signed by the mayor of said city and the engineer of the railroad company, showing the lands and rights specified in said report to be taken; and to take otherwise than by purchase any such lands or rights there shall be recorded in said registry of deeds a statement that the lands and rights specified therein are taken, for highway purposes or for railroad purposes, as the case may be, for the purpose of abolishing said crossings, and the recording of any such statement shall constitute the taking of the lands and rights specified therein. Every such statement shall be signed by the mayor of the city and the engineer of the railroad company."

At the time of its enàctment the report referred to had been filed in the Superior Court for the county of Bristol, providing for the abolition of certain grade crossings in Fall River and for changes in streets and ways incidental thereto. The total estimated cost of carrying out the work recommended in this report is from $1,500,000 to $2,000,000. At the time of the hearing before the single justice, between $350,000 and $400,000 had been expended for the work, and for the purchase of land. The report fills seventy-seven printed quarto pages and it calls for extensive changes which are stated in detail.

It is contended that this statute is void because it is an exercise of judicial power in violation of art. 30 of the Declaration of Rights in the constitution of this Commonwealth. If it is to be treated in substance and effect as a usurpation of the powers of the court in the exercise of judicial functions under existing statutes, rather than as a new enactment for special purposes within the legitimate field of legislation, the objection is well founded ; if it means that the report is confirmed, treating it as made and to be dealt with solely under the authority of previously existing legislation, it is a declaration of a decision which could be made or refused only by the court acting judicially under the statute, and it is therefore unconstitutional and void. But if it is to be treated as special legislation prescribing new rules and additional provisions for making a public improvement, in substitution for those under which the court and commissioners had been acting, it was within the power of the Legislature to enact it.

The question of construction is difficult. If the statute stopped with the word " confirmed " in the first sentence, we should have little hesitation in declaring it unconstitutional. On the other hand, if in substitution for the language of this sentence we found in the act a statement that the St. 1890, c. 428, was repealed in its application to the grade crossings, streets and ways referred to in the report, and that the report should be adopted as a statement of a scheme for changes, and that changes should be made accordingly, and that the provisions following in the act should be applicable, there would be no doubt of its constitutionality. The Legislature has the power, by a special act, to make any reasonable provision in regard to railroad crossings, streets and ways in a city or town. *In re Mayor & Aldermen of Northamp-*

*ton*, 158 Mass. 299 and cases cited. *Scituate* v. *Weymouth*, 108 Mass. 128. *Brighton* v. *Wilkinson*, 2 Allen, 27. *Brayton* v. *Fall River*, 124 Mass. 95. *Old Colony Railroad, petitioner*, 163 Mass. 356. The Legislature, while proceedings were pending under the St. 1890, c. 428, might pass an act terminating those proceedings and establishing a scheme for changes and improvements however elaborate, and might prescribe the method for carrying out the scheme. Instead of stating the particulars of the scheme in the statute, it might refer to a report on file in any depository of public records, which contained the statement. Special statutes in regard to particular railroad crossings, railroad stations, and streets and ways, are very numerous. See St. 1892, cc. 70, 374, 433. There are several special statutes relating to reports or decrees under the St. 1890, c. 428. See Sts. 1892, c. 311; 1901, c. 460; 1899, c. 421; 1900, cc. 193, 453, 471; 1897, c. 519.

Returning now to the language of the act in question, after the first statement already referred to, we find provisions imposing on the railroad company, the city of Fall River and the Commonwealth, respectively, obligations like those imposed by the St. 1890, c. 428, followed by a general statement that the proceedings in connection with the abolition of crossings, shall be governed by this statute and the acts in amendment or addition thereto, as if the decision and report of the commission had been confirmed by the court. Then follows a provision requiring a plan signed by the mayor of the city and the engineer of the railroad company to be filed in the registry of deeds, showing the lands and rights specified in the report to be taken, and a statement signed in like manner to be recorded in the registry, to constitute a taking of lands or rights otherwise than by purchase. This is an independent provision not found in the previous statute. Inasmuch as it was in the power of the Legislature to suspend the proceedings in court under the statute and to adopt independently as its own the scheme found in the report, and as this is what it did in substance, we think that we ought to consider the statute as wholly legislative, and to consider that part which purports to confirm the report as not referring to a confirmation in the case as a part of the judicial proceedings, but as referring rather to an independent adoption of the report as

a part of a legislative act establishing a scheme for changes in Fall River.    To hold otherwise would be to give effect to the form of the first part of the act rather than to the substance of its later provisions.    It is to be regretted that the language chosen was such as to occasion a serious doubt in regard to the legislative intention.    But it is our duty to assume that the Legislature intended to act within its constitutional authority, and to treat the words of the statute, if possible, in such a way as to give them legal effect.    In *In re Mayor & Aldermen of Northampton*, 158 Mass. 299, a similar construction was put upon a statute to which there were similar objections.    The title to the present act, although not very significant, tends somewhat to confirm our conclusion.

The St. 1890, c. 428, was held to be constitutional by this court in *Norwood* v. *New York & New England Railroad*, 161 Mass. 259, and in *Gately* v. *Old Colony Railroad*, 171 Mass. 494. See also *New York & New England Railroad* v. *Bristol*, 151 U. S. 556 ; *Chicago, Burlington, & Quincy Railroad* v. *Nebraska*, 170 U. S. 57, 74 ; *Wheeler* v. *New York, New Haven, & Hartford Railroad*, 178 U. S. 321 ; *Appleton* v. *Newton*, 178 Mass. 276. If by reason of provisions in the scheme of the commissioners broader than are authorized under the St. 1890, c. 428, the railroad company might raise questions of constitutionality beyond those covered by the decisions already referred to, they are not open to this plaintiff, and the consent of the railroad company will be presumed.    *Hingham & Quincy Bridge* v. *Norfolk County*, 6 Allen, 353.    But it does not appear upon the record that there are other questions involving principles different from those applicable to the earlier statute.    We are of opinion that the St. 1900, c. 472, including the provisions adopted from the previous act, is constitutional.

It follows that the prayer for an injunction against continuing the work under the statute, and making changes in Central Street as prescribed in the report, must be denied.

It appears that the defendants, in prosecuting the work, have committed certain trespasses and are threatening to commit trespasses by occupying portions of the plaintiff's land and keeping structures upon it.    No provision for such an occupation is made in terms in the report of the commissioners ; and, although there

is some ground for an argument that a right is given by implication, we are of opinion that this contention cannot be maintained. *Doon* v. *Natick*, 171 Mass. 228. *Clark* v. *Worcester*, 125 Mass. 226, 230. *Thacher* v. *Dartmouth Bridge*, 18 Pick. 501.

The question is whether an injunction should be issued against the maintenance of the structures by the defendants on the plaintiff's land. If repeated trespasses are threatened for which a remedy at law could be obtained only through a multiplicity of suits, making the expense excessive and disproportionate to the damages, an injunction will commonly be issued. *Boston & Maine Railroad* v. *Sullivan*, 177 Mass. 230. *Slater* v. *Gunn*, 170 Mass. 509. Especially is this true when the acts complained of constitute a wilful invasion of the plaintiff's right. *Lynch* v. *Union Institution for Savings*, 158 Mass. 394; *S. C.* 159 Mass. 306, 308. *Attorney General* v. *Algonquin Club*, 153 Mass. 447, 454. *Tucker* v. *Howard*, 128 Mass. 361, 363, and cases cited.

So far as the defendants are using the plaintiff's property wilfully and without legal right, and are threatening to continue to use it, we see no good reason why an injunction should not be issued to restrain them. This part of the prayer of the plaintiff's bill is granted, and there will also be a decree awarding the plaintiff such damages as it has suffered from the unauthorized acts of the defendants.

*So ordered.*

MORTON, J. I agree with so much of the opinion as decides that the plaintiff is entitled to an injunction restraining the defendants from trespassing on their premises, and I regret that I am unable to agree with so much of it as decides that the statute is constitutional.

I do not think that this court is required or has the right to invent a new grammar or a new dictionary in order to save a statute from being condemned as unconstitutional. The fundamental object of inquiry is the intention of the Legislature. In order to ascertain that, the words of the act are to be taken in their common and ordinary meaning unless there is something in the act, or in the circumstances under which it was passed, to show that they were used in a different sense. *Martin* v. *Hunter*, 1 Wheat. 304, 336. *Opinion of the Justices*, 7 Mass. 523, 524,

525. *Hittinger* v. *Westford*, 135 Mass. 258, 259. *Jones* v. *Harrison*, 6 Exch. 328, 333. *McDougal* v. *Paterson*, 11 C. B. 755, 769. *Waller* v. *Harris*, 20 Wend. 555, 561, 562. *Matter of O'Neil*, 91 N. Y. 516. *Pittsburgh* v. *Kalchthaler*, 114 Penn. St. 547. *Steere* v. *Brownell*, 124 Ill. 27. *Gilbert* v. *Dutruit*, 91 Wis. 661. 1 Kent Com. 462. Maxwell, Statutes, (3d ed.) 3. Sutherland, Stat. Constr. § 229. Cooley, Const. Lim. (3d ed.) 55. Cooley, Taxation, (2d ed.) 264. Sedg. Stat. & Const. Law, (2d ed.) 219. Potter's Dwarris on Statutes, 143.

The question is not whether it is possible by the exercise of great ingenuity or subtlety to save a statute from condemnation, but what is its meaning according to the natural and ordinary sense and grammatical construction of the language used, and is it constitutional or unconstitutional as thus construed. This is the only safe rule, and it cannot, it seems to me, be too strongly insisted upon. Any other rule will lead almost inevitably to the substitution by the court, or the tribunal called upon to construe, the statute, of its conjecture of what was meant for the intention actually expressed.

The present case arises under the grade crossing act, St. 1890, c. 428, and amendments, and St. 1900, c. 472. Under the grade crossing act commissioners were appointed by the Superior Court, as therein provided, to consider and report upon the abolition of certain grade crossings in Fall River. The statute provides for a return of the report to the court and for its confirmation by the court. St. 1890, c. 428, § 4. Manifestly it could be confirmed only after due notice to all parties interested, and an opportunity to be heard. The commissioners returned their report into court on the sixteenth day of July, 1900. On the very next day, July 17, St. 1900, c. 472, confirming the report, was passed, to take effect on its passage. No opportunity for a hearing was given, and no hearing was had in the Superior Court.

St. 1900, c. 472, § 1, provides that "The report of the commissioners appointed by the Superior Court for the county of Bristol to consider the abolition of the grade crossings of Brownell street and other streets and ways and the road of the Old Colony Railroad Company in the city of Fall River, filed in said court on the sixteenth day of July of the current year, is hereby confirmed; the Old Colony Railroad Company and the city of

Fall River shall make the alterations prescribed in said report as therein specified; the Commonwealth and said city and railroad company shall pay the cost of said alterations and of the hearing in the proportions prescribed in said report; and all the provisions of chapter four hundred twenty-eight of the acts of the year eighteen hundred and ninety, and all acts in amendment or addition thereto, not inconsistent with this act, shall apply to and govern the proceedings in connection with the abolition of said crossings, in the same manner as if the decision and report of said commission had been confirmed by the court." Then follows a proviso which will be considered later.

If the act had consisted only of what has been quoted, it is plain, I think, that it would have to be construed as intended to confirm the report and nothing more, and therefore, as being unconstitutional. The majority opinion concedes that if it had stopped with the word "confirmed" at the end of the first sentence, it would have been unconstitutional. But there is nothing in the rest of what has been quoted to show that the Legislature intended to do anything else than to confirm the report, or that it intended its action to have any different effect from that which a confirmation by the court would have had. There is nothing to show that the word "confirmed" is used by the Legislature in this act in any different sense from that in which it is used in the grade crossing act as applied to the action of the court in respect to the report of commissioners. The act begins by declaring that the report of the commissioners "is hereby confirmed," and then, after providing that the railroad company and the city shall make the alterations specified in the report, and that they and the Commonwealth shall pay the cost in the proportions therein prescribed, enacts that the provisions of the grade crossing act shall apply to and govern the proceedings in connection with the abolition of the grade crossings considered in the report, "in the same manner as if the decision and report of said commission had been confirmed by the court." If the purpose of the Legislature had been to confirm the report and nothing more, leaving all the other proceedings in the control and subject to the direction of the court where they were pending, it is difficult, it seems to me, to conceive of language which would have expressed that purpose more

plainly than the language used in this act. Still confining ourselves to what has been quoted, there is nothing in it which shows or has any tendency to show that it was the purpose of the Legislature to adopt as its own the scheme contained in the report for the abolition of the crossings therein referred to, and to give effect to it as such. The report is confirmed as a report to the Superior Court, and the confirmation is to have the same effect as if the report had been confirmed by that court. The pending judicial proceedings are to continue as before except that the report is to take effect as confirmed by the Legislature instead of by the court. No change or alteration is made in the scheme reported by the commissioners. The provisions that the railroad company and the city shall make the alterations prescribed in the report and that they and the Commonwealth shall pay the cost in the proportion prescribed therein, add nothing to and take nothing from the effect of a confirmation by the court. If the court had confirmed the report, those parties would have been obliged to do the things prescribed in it as therein provided. Those provisions have therefore no tendency to show that the purpose of the Legislature was to adopt and give effect to the scheme contained in the report as its own.

The proviso is to the effect that a plan signed by the mayor of the city and the engineer of the railroad company shall be filed in the registry of deeds, showing the lands specified in the report to be taken, and that to take otherwise than by purchase, a statement also signed by the mayor and engineer that the lands are taken for highway or railroad purposes, as the case may be, shall also be recorded in said registry, and shall constitute a taking of the lands specified therein. The grade crossing act, St. 1890, c. 428, § 4, provides that the decree of the court confirming the decision of the commission shall constitute a taking of the lands and property specified in the decision, and that a copy of the decision and decree shall be filed with the county commissioners and recorded in the registry of deeds in the counties and districts where the property is situated, and that the taking shall be deemed to be a taking by the city or town if the land is to be used for a public way, and by the railroad if to be used by the railroad. When the Legislature substituted its confirmation for that of the court, a change was rendered necessary

in the machinery regarding the taking of the lands and property specified in the report, and that is the extent of the proviso. It is incidental merely to the confirmation of the report by the Legislature, and cannot, it seems to me, be held by any reasonable construction to convert the act into an independent adoption by the Legislature of the scheme reported by the commissioners.

The Legislature has control of grade crossings, and during the pendency of the proceedings in this case in the Superior Court it could have repealed St. 1890, c. 428, so far as applicable to these particular crossings, and have adopted as its own the scheme reported by the commissioners and have provided for carrying the scheme into effect in such manner as it saw fit. But the difficulty with the statute before us is that that is not what the Legislature has done. It has attempted to substitute its confirmation of the report for that of the court in a pending judicial proceeding ; — which it could not do.

Numerous special acts have been passed in reference to grade crossings. But in only four of the acts which have been called to the attention of the court was there any attempt on the part of the Legislature to confirm the report of the commissioners. These acts are St. 1899, c. 421, St. 1900, cc. 193, 471, 453. The last one is identical with the one before us, and no argument for the constitutionality of this act can be drawn from that. In the others the Legislature amended, corrected and added to the reports of the commissions, and they might well stand as independent adoptions by the Legislature of the schemes contained in them, as thus amended, corrected and altered.

The case of *In re Mayor & Aldermen of Northampton*, 158 Mass. 299, is clearly distinguishable. It was held by a majority of the court that there was no insuperable difficulty in construing the statute in that case as an amendment to the grade crossing act. But the act in this case cannot be construed as an amendment to the grade crossing act. Its whole scope and purpose, as already observed, is to substitute a legislative confirmation of the report for a judicial confirmation in pending judicial proceedings, and it constitutes, it seems to me, a plain violation of the constitutional provision that the legislative department shall not exercise executive or judicial powers, and the executive

department shall not exercise legislative or judicial powers, and the judicial department shall not exercise legislative or executive powers. Declaration of Rights, art. 30.

For these reasons I think that the statute is unconstitutional. Mr. Justice LATHROP and Mr. Justice BRALEY concur in this opinion.