JAMES J. FOSTER *vs.* GROUP HEALTH INCORPORATED
& another.[1]

Suffolk. March 10, 2005. - July 15, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Practice, Civil,* Summary judgment. *Insurance,* Group, Health and accident.
*Statute,* Construction. *Divorce and Separation,* Health insurance.

This court concluded that G. L. c. 175, § 110I (*a*), which mandates that, in
certain circumstances, the insurer of a group health insurance policy
continue to provide coverage to the divorced spouse of a group member, is
applicable to a divorced dependent spouse if, and only if, the member
spouse is a resident of Massachusetts. [672-677]

CIVIL ACTION commenced in the Superior Court Department on
September 3, 2003.

The case was heard by *Geraldine S. Hines,* J., on motions for
summary judgment.

The Supreme Judicial Court granted an application for direct
appellate review.

*James J. Foster,* pro se.

*Nicholas J. Nesgos* for the defendants.

MARSHALL, C.J. We determine in this case the scope of G. L.
c. 175, § 110I (*a*), which mandates that, in certain circum-
stances, the insurer of a group health insurance policy continue
to provide coverage to the divorced spouse of a group member.[2]
Prior to his divorce, the plaintiff, James J. Foster, now a resident

---

[1]Empire Blue Cross Blue Shield.

[2]A group health insurance policy, also known as a general or blanket policy,
is a comprehensive policy that covers a number of individual persons, typi-
cally employees or union members. The policy purchaser is known as the
"policyholder" or "contract holder." Group policies of health insurance typi-
cally cover an enrolled "member" or "insured," and his or her enrolled
dependents. See generally 1 E.M. Holmes, Appleman on Insurance § 2.5 (2d
ed. 1996); 1 G. Couch, Insurance § 1:8.1 (3d ed. 1995 & Supp. 2004).

of Massachusetts, was married to Paula Foster,[3] an employee of the New York City board of education (New York City) and at all relevant times a resident of New York City. Paula was a member of group health insurance plans offered by New York City, and James received health benefits under those policies as her dependent spouse. Each group insurance plan contained a provision that insurance coverage of a dependent spouse would terminate in the event of divorce from the group member. At some time following the divorce (the record does not say when), the defendants refused to provide continued health insurance coverage to James.

In 2003, James commenced this action in the Superior Court alleging that the provisions of G. L. c. 175, § 110I (*a*), as amended through St. 1986, c. 579, § 5, require that the defendants continue to provide comprehensive health insurance coverage to him. He relies on the last sentence of § 110I (*a*), which, since 1986, has provided that continued health insurance coverage "shall apply to any policy issued or renewed within or without the commonwealth and which covers residents of the commonwealth." G. L. c. 175, § 110I (*a*).[4] For the reasons we discuss below, G. L. c. 175, § 110I (*a*), is applicable to a divorced dependent spouse if, and only if, the member spouse (here Paula) is a resident of Massachusetts. Because Paula resided in New York at the time of divorce, insured by insurers

---

[3]Because they share the same last name, we refer to Paula Foster and James J. Foster by their first names.

[4]General Laws c. 175, § 110I, as amended through St. 1986, c. 579, § 5, provides in relevant part:

"(*a*) In the event of the granting of a judgment absolute of divorce or of separate support to which a member of a group hospital, surgical, medical, or dental insurance plan provided for in [G. L. c. 175, § 110,] is a party, the person who was the spouse of said member prior to the issuance of such judgment shall be and remain eligible for benefits under said plan, whether or not said judgment was entered prior to the effective date of said plan, without additional premium or examination therefor, as if said judgment had not been entered; provided, however, that such eligibility shall not be required if said judgment so provides. Such eligibility shall continue through the member's participation in the plan until the remarriage of either the member or such spouse, or until such time as provided by said judgment, whichever is earlier. *The provisions of this section shall apply to any policy issued or renewed within or without the commonwealth and which covers residents of the commonwealth*" (emphasis added).

not subject to Massachusetts regulation, we affirm the summary judgment entered in favor of the defendants.

*Facts and procedural history.* In 1972, James married Paula, a teacher in the New York City public school system. New York City contracted with Group Health Incorporated (GHI) and Empire Blue Cross Blue Shield (Empire), both New York insurance companies, to provide comprehensive medical and hospital benefits, respectively, to New York City employees and their dependents enrolled in the New York City employee benefits program.[5] The insurance policies were approved by the New York State insurance department, issued in New York, and by their terms were governed by the laws of the State of New York. As a New York City employee, Paula was a covered member of both the GHI and Empire group health insurance plans, and James was entitled, as her dependent spouse, to receive health benefits under those policies for a "nominal" premium. Both policies expressly provided that coverage of a dependent spouse would cease on divorce from the member spouse.[6]

In August, 1987, James became a resident of Massachusetts. He remained married to Paula, who continued to reside in New York City, employed in the public schools.[7] James and Paula were divorced in Massachusetts in 1992. In 2001, on her retirement from her employment by New York City, Paula changed her coverage under the GHI policy from family to individual

[5]The New York City employee benefits program was created through collective bargaining agreements between New York City and its municipal unions.

[6]The GHI policy stated the following in a section entitled Termination and Reinstatement: "Coverage terminates . . . for a spouse, when divorced from an employee or retiree." The policy also stated that "an ex-spouse is never covered under this plan regardless of the provisions of any divorce judgment or settlement agreement. The submitting of a claim by or for an ex-spouse of a covered employee is insurance fraud."

The Empire policy defined an eligible dependent as "[a] legally married husband or wife, but never an ex-spouse." The contract further provided that coverage would terminate "for a spouse, when divorced from an employee."

[7]The record does not explicitly state Paula's residence at the time of her divorce from James. The record does establish that, from at least 1972, when she married James, until the time of her retirement in 2001, Paula was employed at various times by New York City. We take judicial notice of the Foster's divorce judgment nisi entered in the Suffolk County Division of the

coverage.[8] In sworn statements James has asserted that, after he moved to Massachusetts, both GHI and Empire reimbursed him for claims for medical services provided to him in Massachusetts, but that because of the divorce,[9] Empire and GHI have now rejected claims for medical services provided to him.[10]

In September, 2003, James commenced this action in the Superior Court. He sought an injunction ordering GHI and Empire to comply with G. L. c. 175, § 110I (a), and to "provide benefits to [him] to the same degree and under the same terms as would have existed but for the judgment of divorce."[11] After Empire answered the complaint, James moved for summary judgment against it. Empire filed a cross motion for summary judgment. GHI moved to dismiss the complaint for lack of personal jurisdiction, with a supporting affidavit. James countered with a motion for summary judgment against GHI. Both GHI and Empire argued that Massachusetts courts lacked personal jurisdiction over them, and that James's claims failed as a matter of law because the group policies at issue expressly provided no coverage to a former spouse. GHI also argued that application of G. L. c. 175, § 110I (a), would violate the due process clause of the Fourteenth Amendment to the United States Constitution.

Probate and Family Court Department on January 22, 1992, and the judgment absolute entered on April 21, 1992. The docket reflects that Paula and James were last domiciled together in New York City, and that, at the time of the divorce, Paula was a resident of New York City. There is nothing in the record to suggest that Paula ever resided in Massachusetts.

[8]The record does not reflect whether on her retirement Paula made a similar change in coverage under the Empire policy.

[9]There is nothing in the record to suggest when either insurance company was informed of the 1992 divorce. It appears that Empire and GHI first learned of the 1992 divorce some time after 2001 when Paula changed her GHI coverage from family to individual coverage on her retirement.

[10]Empire admitted that it has rejected "certain claims" submitted by James. GHI has not denied James's assertion that it too has rejected such claims, and we therefore accept that GHI has refused to pay the claims. See *Framingham Clinic, Inc.* v. *Zoning Bd. of Appeals of Framingham*, 382 Mass. 283, 298 (1981) (on motion for summary judgment, movants' credible evidence must be accepted as true when opposing party does not offer counter-affidavits or other evidentiary material contesting the evidence).

[11]James does not suggest that, in denying him coverage, the defendants were in violation of any court order, nor does he argue that the defendants are estopped from denying him continued health insurance coverage. His sole claim is one of statutory entitlement.

Following a single hearing, a Superior Court judge denied James's motions for summary judgment, allowed Empire's motion for summary judgment, and entered summary judgment for GHI pursuant to Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). The judge ruled that coverage for James had terminated under the terms of the insurance policies; that G. L. c. 175, § 110I (a), was inapplicable because the parties to the group insurance contracts, the defendants and New York City, had agreed to be bound by New York law; that the provisions of the policies terminating James's benefits on divorce were controlling; and that James had suggested "no persuasive reason" why a Massachusetts court should decline to enforce the contracts. She did not directly address James's statutory claim, which is the heart of his case. Final judgment dismissing the complaint entered in August, 2004, from which James appealed. We granted his application for direct appellate review.

*Discussion.* In reviewing a grant of summary judgment, we view the evidence in its light most favorable to the nonmoving party, and determine whether the moving party is entitled to a judgment as a matter of law. See *Beal* v. *Selectmen of Hingham,* 419 Mass. 535, 539 (1995). We may consider any ground supporting the trial judge's ruling. *Hawthorne's, Inc.* v. *Warrenton Realty, Inc.,* 414 Mass. 200, 210 n.6 (1993).

In this case, the material facts are not in dispute. Our resolution therefore turns solely on the interpretation of the last sentence of G. L. c. 175, § 110I (a). The defendant insurers point to their respective policies, each providing that group health insurance for a dependent spouse terminates when he is divorced from the member employee.[12] See note 6, *supra.* James counters that G. L. c. 175, § 110I (a), trumps the express language of any group health insurance contract denying coverage to a former spouse so long as the dependent spouse resides in Massachusetts. We reject any such interpretation of the statute,

---

[12]On appeal James argues for the first time that the choice of law provisions contained in the New York insurance policies at issue are invalid under G. L. c. 175, § 22. James is foreclosed from pursuing the point here. See *Donahue* v. *Dal, Inc.,* 314 Mass. 460, 463 (1943) ("too late" to allow party to raise for first time on appeal issue not raised at trial). In any event, that statute has no relevance because the group health insurance policies at issue were not "made in the commonwealth." See G. L. c. 175, § 22.

not only because it strains common sense, *Clarke* v. *Kentucky Fried Chicken of Cal., Inc.*, 57 F.3d 21, 29 (1st Cir. 1995), but because to do otherwise would give rise to grave doubts about the statute's constitutionality, which we presume was contrary to the Legislature's intent. See *Providence, Fall River & Newport Steamboat Co.* v. *Fall River*, 183 Mass. 535, 542 (1903) ("it is [the court's] duty to assume that the Legislature intended to act within its constitutional authority").

A hypothetical example exposes the deficiency of James's argument. Under his interpretation of G. L. c. 175, § 110I (*a*), a California insurance company regulated by the California Insurance Commissioner, that issued a group health insurance policy to a California employer (policyholder) to cover California employees (members), and which in fact covered only California employees and their dependents, would be subject to G. L. c. 175, § 110I (*a*), if, at any time prior to divorce, a dependent spouse established Massachusetts residency. Thus, under James's theory, G. L. c. 175, § 110I (*a*), would mandate postdivorce continuation coverage even if the California insurer had no contacts with Massachusetts, did no business in Massachusetts, had contracted to terminate coverage of former spouses, and even if a dependent spouse relocated to Massachusetts for the sole purpose of obtaining health care continuation benefits following an anticipated divorce. We shall not impute to the Massachusetts Legislature an intent to regulate out-of-State insurance companies that have no contact with Massachusetts, and have never contracted to provide coverage to Massachusetts residents. Rather, we are confident on a review of the statutory history of the 1986 amendment that the Massachusetts Legislature intended merely to clarify that a dependent spouse of a Massachusetts insured (member) would have access to postdivorce coverage regardless whether the insurer of the Massachusetts member was located within or without the Commonwealth.

We begin our discussion by describing G. L. c. 175, § 110I (*a*), before it was amended in 1986. See *Haley* v. *Commissioner of Pub. Welfare*, 394 Mass. 466, 477 n.9 (1985); *Barclay* v. *DeVeau*, 11 Mass. App. Ct. 236, 241, *S.C.*, 384 Mass. 676 (1981), citing 1A C. Sands, Sutherland Statutory Construc-

tion § 22.34 (4th ed. 1972) (provisions of amendatory act to be considered together with provisions of original act). Section 110I is part of the comprehensive statutory scheme set forth in G. L. c. 175, which contains numerous provisions regulating commercial insurance companies doing business in Massachusetts. That chapter grants to the Massachusetts Commissioner of Insurance broad authority to regulate insurers, transactions among insurers and their policyholders, and the specific content of insurance policies. General Laws c. 175, § 110, in turn, regulates commercial insurance companies that "deliver[ ] or issue[ ] for delivery [group policies] in the commonwealth."[13]

Initially inserted by St. 1981, c. 735, G. L. c. 175, § 110I, provided that the former dependent spouse of a member of a health insurance policy "provided for in [G. L. c. 175, § 110]," i.e., a policy regulated by Massachusetts ("delivered or issued for delivery in the commonwealth"), would (unless the divorce judgment specified otherwise) remain eligible for continued coverage under the member's group health insurance policy, at the group premium rate, until remarriage of either the group plan member or the dependent former spouse.[14] If the member spouse remarried, an unmarried former dependent spouse could

---

[13]General Laws c. 175, § 110, uses the terms "general" or "blanket" policies to describe group policies. See *Kusy* v. *Millbury*, 417 Mass. 765, 768 (1994).

[14]General Laws c. 175, § 110I, as amended by St. 1984, c. 414, § 3, provided:

"(*a*) In the event of the granting of a judgment absolute of divorce or of separate support to which a member of a group hospital, surgical, medical, or dental insurance plan provided for in section one hundred and ten is a party, the person who was the spouse of said member prior to the issuance of such judgment shall be and remain eligible for benefits under said plan, whether or not said judgment was entered prior to the effective date of said plan, without additional premium or examination therefor, as if said judgment had not been entered; provided, however, that such eligibility shall not be required if said judgment so provides. Such eligibility shall continue through the member's participation in the plan until the remarriage of either the member or such spouse, or until such time as provided by said judgment, whichever is earlier.

"(*b*) In the event of the remarriage of the group plan member referred to in subsection (*a*), the former spouse thereafter shall have the right, if so provided in said judgment, to continue to receive benefits as are avail-

maintain continued coverage, if the divorce decree so provided, by means of a rider to the family plan or the issuance of a family plan, either of which could require the dependent spouse to pay a "just and reasonable" increased premium rate, as determined by the Massachusetts commissioner. The provisions of G. L. c. 175, § 110I (a), therefore applied only when a member spouse belonged to a group plan regulated by the Massachusetts commissioner. Stated differently, prior to the 1986 amendment, James would not have been entitled to continuation benefits because the group policy at issue was not one regulated by Massachusetts.

We turn now to the 1986 amendment. By this amendment, the Legislature clarified that the existing provisions of G. L. c. 175, § 110I (a), applied to out-of-State insurers. The circumstances of the enactment of the 1986 amendment illuminate this interpretation of the statute. See *Triplett* v. *Oxford*, 439 Mass. 720, 723 (2003), quoting *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513 (1975) (factors relevant to ascertaining Legislature's intent include "cause of [statute's] enactment, the mischief or imperfection to be remedied and the main object to be accomplished").

The 1986 amendment was enacted in the wake of the United States Supreme Court decision in *Metropolitan Life Ins. Co.* v. *Massachusetts*, 471 U.S. 724 (1985) (*Metropolitan Life*). That case concerned, inter alia, the applicability of G. L. c. 175, § 47B, which mandated that mental health benefits be included in group insurance policies issued pursuant to G. L. c. 175,

---

able to the member, by means of the addition of a rider to the family plan or the issuance of an individual plan, either of which may be at additional premium rates determined by the commissioner of insurance to be just and reasonable in accordance with the additional insuring risks involved.

"(c) The name, address, and policy number of a person eligible for health insurance coverage pursuant to subsections (a) or (b) if available shall be forwarded by such insurance company to the department of public welfare within thirty days of the date when coverage of said person under said subsections is commenced."

In addition to the 1986 amendment at issue in this case, § 110I was further amended in 1988 and 2003, amendments that are not relevant to this case. See St. 1988, c. 23, § 49; St. 2003, c. 9, § 36.

§ 110. The Massachusetts Attorney General brought suit for declaratory and injunctive relief against two out-of-State insurers (New York and Connecticut) to enforce G. L. c. 175, § 47B. *Id.* at 734. The out-of-State insurers had issued group health insurance policies to out-of-State policyholders who employed or represented "employees *residing* in Massachusetts" (emphasis added). *Id.* The insurers refused to provide the mandated mental health benefits, arguing that the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. (ERISA), and the National Labor Relations Act, 29 U.S.C. §§ 151 et seq. (NLRB), preempted the Massachusetts statute. *Metropolitan Life, supra* at 727. The Supreme Court held that G. L. c. 175, § 47B, constituted "State regulation of the 'business of insurance' " and was not preempted by either Federal statute. *Id.* at 743.

*Metropolitan Life* concerned only mandated mental health benefits. Subsequently, the Attorney General apparently sought to clarify that other benefits mandated by G. L. c. 175, § 110 (§ 110I, among others), were available to members of group insurance plans who resided in Massachusetts, regardless of the location of their insurer or policyholder. In January, 1986, four Senate bills were filed, one of which, 1986 Senate Doc. No. 752, was a petition of the Attorney General. He proposed that a sentence be added to § 110I (*a*) as follows: "The provisions of this subsection shall apply to any policy issued or delivered within or without the Commonwealth."[15] Of the three other Senate bills, all of which had the same sponsor, only one proposed any change to § 110I. That bill would have added a subsection (*d*) to § 110I, making that section applicable "to all insurance plans classified above [i.e., within paragraphs 110I (*a*)-(*c*) of § 110I] whether written within or without the Commonwealth."

On June 5, 1986, the Senate Committee on Insurance noted that the four bills had been referred to it, and reported out 1986

---

[15]The Attorney General simultaneously sought to add similar language to the only other sections of G. L. c. 175, § 110, that mandated insurance benefits: § 110D, mandating continuation coverage in the event of job loss due to plant closing; § 110G, mandating continuation coverage to survivors and dependents when a member is involuntarily terminated or dies; and § 110 (H), mandating benefits for expenses arising from the treatment of alcoholism.

Senate Doc. No. 1978, entitled "An Act relating to the extraterritorial application of mandated insurance benefits." The Senate proposed revisions to all mandated benefits provisions of G. L. c. 175, § 110, including § 110I, to the effect that "[t]he provision of this section shall apply to any policy issued or renewed within or without the commonwealth which covers residents of the commonwealth."[16] Following passage by the House of Representatives and the Senate, the Governor signed 1986 Senate Doc. No. 1978 into law on December 9, 1986. As its title confirms, the 1986 amendment gave extraterritorial application to existing mandated benefits. Nothing suggests that mandated benefits were to be made available to members like Paula who were *not* residents of Massachusetts.

We therefore decline to adopt the statutory construction urged on us by the plaintiff. See *Providence, Fall River & Newport Steamboat Co.* v. *Fall River*, 183 Mass. 535. 542 (1903) (court's obligation is "to treat the words of the statute, if possible, in such a way as to give them legal effect"). James is no more entitled to continuation coverage now than he was before 1986.

For all of these reasons we conclude that the mandated benefits provisions of G. L. c. 175, § 110I (*a*), are not available to the plaintiff where his former spouse resided in New York at the time of divorce, insured by insurers not subject to Massachusetts regulation.[17]

*Judgments affirmed.*

---

[16]Interpreted literally, the Senate bills proposed by the Attorney General and the second sponsor would have extended regulation by the Massachusetts commissioner to out-of-State insurers ("without the Commonwealth") who issued policies out-of-State ("without the Commonwealth"), even if a policy had no nexus whatsoever to Massachusetts. The Legislature appropriately narrowed the proposed language to circumstances where members who were insured by such policies actually resided in Massachusetts, the factual circumstances addressed by the United States Supreme Court in *Metropolitan Life Ins. Co.* v. *Massachusetts*, 471 U.S. 724, 734 (1985).

[17]The plaintiff has not called our attention to, nor have we discovered, any commentator or author who has suggested that a dependent former spouse may benefit from the provisions of G. L. c. 175, § 110I (*a*), where the member spouse has never been a resident of the Commonwealth. See, e.g., Bilezerian, Massachusetts Health Care Continuation Coverage Requirements: A Practical Approach, 45 B.B.J. 4 (2001); Lillis, Health Insurance After Divorce, Mass. Fam. L.J. 101, 102 (1996). See also C.P. Kindregan, Jr. & M.L. Inker, Family Law and Practice §§ 8:21, 38:27 (3d ed. 2002) (same).