Hadley, J.
The plaintiff, Honey Pot Hill Orchards, Inc. (“Honey Pot”), has appealed the summary judgment entered for the defendants, Foley, Inc. and Jay Foley (“Foley). Honey Pot asserts that there are genuine issues to be tried in this case, and that the defendants are not entitled to judgment as a matter of law. Based on a review of the pleadings, affidavits, and discovery responses in the light most favorable to Honey Pot, the nonmoving party, Fosters v. Group Health, Inc., 444 Mass. 668, 672 (2005), the following facts were before the motion judge.
Honey Pot operates an apple orchard and uses a large agricultural sprayer in its business. The sprayer had been used for many years, and was powered by an industrial engine which had been in use since at least 1970. In 2006, however, the sprayer’s engine was no longer functioning properly.
On July 18,2006, Andrew Martin (“Martin”), Honey Pot’s CEO, traveled to Foley, Inc.’s place of business in Worcester, Massachusetts to procure a replacement engine for the sprayer. Martin told a representative of Foley, Inc. that Honey Pot needed to replace the existing engine in the agricultural sprayer, and that he had the original owner’s manual that had accompanied the existing engine. He stated that the engine that had powered the sprayer was a Chrysler Model HT361104. The Foley, Inc. representative made a written note of the engine make and model. Martin asked the individual who assisted him whether he needed any more information from Honey Pot in order to procure the replacement engine for the sprayer, and was told that he did not. He also asked about Foley, Inc.’s return policy. Specifically, Martin inquired whether Foley, Inc. would take the replacement engine back if it did not work or did not fit in Honey Pot’s sprayer. The defendant’s representative *93 answered affirmatively, and assured Martin that the replacement engine would fit and would work in the sprayer.
Foley, Inc. then ordered a Chrysler HT-361104 engine for Honey Pot from Chicago Power System, Inc. (“CPS”), a company in Illinois. After it had been delivered to Foley, Inc., Martin returned to Foley, Inc. on July 26, 2006 to pick up the replacement engine. He received an invoice, which he read. The invoice, which was dated July 18, 2006, stated that “[mjerchandise is not to be returned without prior approval. Merchandise returned is subject to a 25% restocking charge. Gaskets and electrical parts are NOT RETURNABLE. NO REFUNDS-IN STORE CREDIT OR EXCHANGES ONLY.”
The invoice identified the product that was being sold to Honey Pot as an “HT361 replacement engine type 104231790.” It listed a price of $3,995.00, plus a shipping charge of $275.00 and an “old engine deposit” in the amount of $600.00. Although the invoice had a signature line, the document was not signed by anyone. The part numbers on the invoice matched the numbers on the engine that Honey Pot had been using in its sprayer. Before leaving Foley, Inc., Martin looked at the replacement engine. It appeared to be same as the engine that had been in the sprayer.
Along with the invoice, Martin was given a document that bore the company’s name and generally described Foley, Inc.’s services and products. The following was printed on the document: “100% 60 day unconditional guaranteed satisfaction.” Martin paid the invoice in full and left with the replacement engine.
Later that day, the existing engine was removed from the sprayer, and Honey Pot personnel saw that the bolt pattern on the crankshaft flange on the replacement engine did not match the bolt pattern on the flange on the existing engine. The flange on the replacement engine had six holes in it, while the flange on the existing engine had eight holes in it. This meant that the replacement engine, equipped with that flange, could not be used in conjunction with the drivetrain on the sprayer.
The following day, Martin contacted Foley, Inc. and reported that the replacement engine bolt pattern was not compatible with the bolt pattern needed to turn the dri-veshaft on the sprayer. The Foley, Inc. employee with whom Martin spoke told Martin that a company in Rochester, New Hampshire could bore two additional holes in the replacement engine’s flange. He said that Foley, Inc. would pay for the work, but Honey Pot would have to deliver the engine to the company that would make this modification. Rochester is approximately a two-hour drive from Worcester. Martin was not convinced that this modification would allow the sprayer to operate properly and insisted that Honey Pot had expected to receive the exact same engine that was in its sprayer. On behalf of Honey Pot, Martin demanded that Foley, Inc. take back the engine and refund Honey Pot’s money. Foley, Inc. refused to do so.
Honey Pot subsequently learned that the replacement engine that CPS sold to Foley, Inc. had a six-bolt-hole crankshaft flange, as did all model HT-361 Chrysler industrial engines made in the last several decades. Prior to the 1970s, however, the crankshaft flanges on Chrysler HT-361 industrial engines had eight bolt holes. Honey Pot contends that although its own employees were not aware of this change, Foley, Inc., as an industrial engine wholesaler, was or should have been aware of these circumstances when it sold the replacement engine to Honey Pot.
In its complaint, Honey Pot alleges that Foley, Inc. breached the sales contract for *94 the replacement engine by supplying a nonconforming good and by refusing to accept the return of the engine as promised. It also asserts that Honey Pot relied on Foley, Inc.’s skill in selecting the appropriate engine and that Foley, Inc. breached the implied warranties of merchantability and fitness for a particular purpose. Finally, Honey Pot asserts that Foley, Inc. or Foley, or both, violated G.L.c. 93A, §§2 and 11.
Summary judgment was entered for the defendants on all counts after the motion judge determined that the defendants sold Honey Pot the exact make and model of the engine that it had requested, and that the defendants had no reason to know at the time the contract was made that Honey Pot had a particular purpose for the engine. The judge concluded that Honey Pot’s contention that Foley, Inc. had a duly to ensure that Honey Pot was requesting the correct engine overstated the obligation of a commercial seller.
1. As this matter involves the sale of goods, the Massachusetts version of the Uniform Commercial Code applies. General Laws c. 106, §1-201(11) defines a contract as “the total legal obligation which results from the parties’ agreement,” as affected by applicable law. General Laws c. 106, §1-201(3) defines an agreement as “the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance as provided in this chapter.” In addition, G.L. c. 106, §2-313(1) (a) states that “[a]ny affirmation of fret or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.”
Once again, viewing the evidence in the light most favorable to the nonmoving party, the agreement between the parties included an affirmation of fact that the replacement engine would fit and work in the sprayer, and a promise by Foley, Inc. that if the replacement engine did not fit or did not work in the sprayer, Foley, Inc. would take it back. Foley, Inc. asserts that, apart from the number of bolt holes in the flange, there is no evidence that the replacement engine itself does not run or that it does not physically fit inside Honey Pot’s sprayer. As outlined above, however, the replacement engine will not work in the sprayer because, in the configuration in which it was sold, it cannot be connected to the drive mechanism due to the differing bolt-hole patterns. As these different interpretations of the promises allegedly made by Foley, Inc. illustrate, the issues surrounding the plaintiffs claim of a breach of express warranty present genuine issues of material fact that cannot be decided on a motion for summary judgment.
2. With regard to Honey Pof s claim of a breach of the implied warranty of fitness for a particular purpose, G.L. c. 106, §2-315 states:
Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller’s skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.
To recover on an implied warranty of fitness for a particular puipose, therefore, Honey Pot must demonstrate that: (a) Foley, Inc. had reason to know Honey Pofs *95 purpose; (b) Foley, Inc. had reason to know that Honey Pot was relying on Foley, Inc.’s skill or judgment to furnish the appropriate replacement engine; and (c) Honey Pot did, in fact, rely on Foley, Inc.’s skill or judgment.
In Commonwealth v. Johnson Insulation, 425 Mass. 650 (1997), the Supreme Judicial Court dealt with a situation in which the buyer provided precise and complete specifications to the seller, and commented that under those circumstances implied warranties may be excluded. Id. at 655. The Court noted that generally and “[ljogically, in the circumstances where a buyer specifies the desired goods, in detail, to a seller, the buyer has not relied on the seller’s skill and judgment in selecting those goods, and hence, by the terms of §2-315, a warranty of fitness for a particular purpose does not exist.” Id.
The Court has also indicated, however, that there need not be total reliance on the judgment and skill of the seller. That is, a buyer may rely on his own judgment as to some matters and on the skill and judgment of the seller as to others. See Kurriss v. Conrad & Co., 312 Mass. 670 (1942).[3] See also H. LEMELMAN, MANUAL ON UNIFORM COMMERCIAL CODE §2.48, at 105 (3d ed. 2002). As the comment to G.L.c. 106, §2-315 states, in a purchase of specified articles, a reference to a patent or a trade name is treated as a factor to be considered in determining whether the buyer relied on the seller’s skill or judgment. G.L.c. 106, §2-315 comment 5. Finally, the Supreme Judicial Court has stated that “[t]he determination whether this warranty arises ordinarily is a question of fact.” Fernandes v. Union Bookbinding Co., 400 Mass. 27, 33 (1987). In view of the circumstances presented in this case, we find that questions of fact exist that preclude summary judgment.
3. As to Honey Pot’s claim of breach of the implied warranty of merchantability, it is often the case that goods will not meet the implied warranty of fitness for a particular purpose, but are perfectly merchantable. This is the case here. The motion judge correctly ordered summary judgment on this claim as there is no evidence that the replacement engine was not fit for the ordinary purposes for which such goods are used. Finally, summary judgment should not have been entered on Honey Pot’s G.L.c. 93A claims in light of the above determinations concerning its warranty claims.
Accordingly, the allowance of the defendants’ summary judgment motion on Honey Pot’s claim for breach of the implied warranty of merchantability is affirmed. The summary judgment for the defendants on all remaining claims is vacated, and the case is returned to the Worcester District Court for trial on those claims.
So ordered.

 See also Reynolds Metals Co. v. Alcan, Inc., 60 UCC Rep. Serv. 2d 530 (W.D. Wash. 2005) (“[A]n implied warranty of fitness may exist even though the buyer’s reliance on the seller’s skill and judgment is not a total reliance, and the buyer has relied on his own judgment as to some matters and on the seller as to other matters.”).